## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| VINCENT WEBB and AVERY LANE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06CV 168 LMB |
| | ) | |
| ATLAS COLD STORAGE MIDWEST LIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court upon plaintiffs' Complaint alleging employment discrimination by defendant based upon race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Currently pending is Defendant's Motion for Summary Judgment. (Document Number 12). Plaintiffs have filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment, along with a Statement of Material Facts at Issue. (Docs. No. 15, 16). Defendant has filed a Reply and a Response to Plaintiffs' Statement of Facts. (Doc. No. 18, 19).

<h1 align="center"><u>Background Facts</u>[1]</h1>

Plaintiffs Vincent Webb and Avery Lane, both African-American, became employed at defendant Atlas Cold Storage Midwest Limited's ("Atlas") Sikeston, Missouri, facility during May 2002. Atlas' Operations Manager at the time, Taylor Vanness, personally interviewed and hired both plaintiffs. In April of 2005, both plaintiffs received and reviewed Atlas' General Safety Rules, which provided in part, "[n]o employee shall threaten, intimidate or interfere with other employees on the premises at any time." Prior to November 1, 2005, both plaintiffs received positive performance evaluations and raises. Mr. Vanness was involved in plaintiffs' performance evaluations and authorized their raises. Mr. Vanness approved $.75, $.60, $1.00, and $.50 per hour increases for Mr. Lane in 2002, 2003, 2004, and 2005, respectively, and $.75, $.85, $.90, and $.75 per hour increases for Mr. Webb in 2002, 2003, 2004, and 2005, respectively. Mr. Vanness authorized pay increases for plaintiffs less than six months prior to plaintiffs' discharge. At least some of the pay increases plaintiffs received from Mr. Vanness were discretionary merit increases and not just annual increases.

During the month of October 2005, an Atlas employee or group of employees wrote the word "snitch" in marker on employee Terry McNew's locker in the locker room, and someone kicked a hole in the locker-room wall. Mr. Vanness and other management employees held a meeting with employees during the week before November 1, 2005, regarding the vandalism,

---

[1]The court's recitation of the facts is taken from defendant's Statement of Uncontroverted Material Facts, plaintiffs' Statement of Material Facts at Issue, and defendant's Reply to Plaintiff's Denials of its Uncontroverted Material Facts. The court has noted any disputes as they are set forth in the briefs.

including the word "snitch" on the locker.[2]

On November 1, 2005, plaintiffs traveled to work together and arrived at the facility together wearing shirts depicting a traffic stop sign with the word "snitching" to effect "stop snitching." Mr. Lane's shirt was a black hooded sweatshirt that featured a traffic stop sign with the word "snitching" under the word "stop" all within the sign. Mr. Webb's shirt was a white short-sleeved t-shirt that featured a stop sign with the word "snitching" underneath the sign and with bullet holes depicted on the stop sign. No Atlas employee had worn the "stop snitching" logo to Atlas' Sikeston facility prior to November 1, 2005. On November 1, 2005, Mr. Vanness stopped plaintiffs as they entered the building to clock in and directed them to a conference room with another manager, Tammy Six. Plaintiffs had a conference with Mr. Vanness and Ms. Six, during which Mr. Vanness told plaintiffs the shirts were inappropriate and a continuation of the prior threats and intimidation.[3] Mr. Vanness and Ms. Six released plaintiffs to go back to work and then held another meeting with the first shift and second shift employees regarding intimidation and vandalism.[4] Mr. Vanness, Larry Jones, and Traci Golden discussed plaintiffs'

---

[2]Plaintiffs deny this fact on the basis that Troy Willis testified that the focus of the meeting related to physical damage to property and that anyone caught doing damage would be terminated. Plaintiffs also cite Mr. Webb's deposition testimony that the managers had not talked specifically about "snitching" to the employees.

[3]Plaintiffs deny that Mr. Vanness told plaintiffs that the shirts were a continuation of the prior threats and intimidation. Plaintiffs cite Mr. Vanness' testimony about the November 1, 2005 incident, where he never claims to have told plaintiffs such. Defendant responds that, although Mr. Vanness' testimony does not indicate whether he told plaintiffs that the shirts were a continuation of prior threats and intimidation because plaintiffs' counsel did not ask Mr. Vanness whether he said this, Mr. Webb acknowledged to a Missouri Commission on Human Rights investigator that Mr. Vanness made this statement.

[4]Plaintiffs deny that this meeting was another meeting regarding intimidation and vandalism based on their argument that the focus of the previous meeting was related to physical

actions from November 1, 2005, and decided to terminate plaintiffs' employment. Only Mr. Vanness, Mr. Jones, and Ms. Golden made the actual decision to discharge plaintiffs.[5]

Ms. Golden does not recall ever meeting either plaintiff and Ms. Golden did not know plaintiffs' race until they filed their discrimination charges underlying this suit. Mr. Vanness called both plaintiffs on November 2, 2005, to let them know they had been terminated. Atlas sent each plaintiff a letter explaining they were being discharged for "abusive, threatening and intimidating acts towards other employees and creating a hostile work environment. Per company policy, this type of behavior will not be tolerated."

No single person may be identified as an employee who "replaced" either plaintiff. In the year following plaintiffs' discharge, Atlas hired fifteen African-Americans. Mr. Vanness hired four African-Americans before he left the Atlas Sikeston facility to become employed with Atlas in another state. Mr. Vanness hired another African-American employee, Colley Sangleton, and promoted him to foreman. Mr. Vanness later asked Mr. Sangleton to move to Pendleton, Indiana to work as his "right-hand man" in Mr. Vanness' new position at another Atlas facility.

Mr. Vanness never behaved in a way that made Mr. Lane believe Mr. Vanness was racist before Mr. Lane was discharged. Mr. Vanness never did or said anything that led Mr. Webb to believe that he was prejudiced against African-Americans. Neither Mr. Lane nor Mr. Webb has

---

damage to property and Mr. Webb's testimony that the managers had not talked about "snitching" to the employees. In its Reply, however, defendant cited Mr. Webb's deposition testimony that during the meeting, it was stated that "they're not going to tolerate intimidating threatening acts towards employees." Deposition of Vincent Webb at 58:4-9.

[5]Plaintiffs deny this fact based on Troy Willis' deposition testimony, where he admitted that he had mentioned to Mr. Vanness employees who "didn't need to be there," and indicated that he might have recommended to management that plaintiffs did not need to be there. Deposition of Troy Willis at 61:20-63:25.

any reason to believe that Mr. Jones was prejudiced against African-Americans. Neither Mr. Lane nor Mr. Webb has heard Mr. Vanness or Mr. Jones make any racially derogatory comments about African-Americans.

Plaintiffs do not know whether Mr. Vanness or other management employees had actually seen any Atlas employees wearing apparel bearing confederate flags or sexual statements. Plaintiffs never complained that employees were wearing apparel bearing confederate flags or sexual statements and, to plaintiffs' knowledge, no one in fact complained about it. Mr. Vanness never saw an employee at Atlas wearing anything with a confederate flag or bearing a sexual joke or statement. If Mr. Vanness had seen someone wearing apparel with a confederate flag or bearing a sexual joke or statement, he would have asked the employee to refrain from wearing it, even if it came to firing the employee.

## Discussion

Defendant argues that plaintiffs' race discrimination claim cannot survive summary judgment because they cannot establish a prima facie case of race discrimination. Defendant also claims that Atlas has proffered a legitimate, non-discriminatory reason for terminating plaintiffs' employment, and that there is no evidence to suggest that Atlas' reason is a pretext for unlawful discrimination. Defendant further argues that plaintiffs have not adduced any direct evidence of race discrimination.

## A.    Summary Judgment Standard

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil

Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences from those facts in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the nonmovant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. The nonmovant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

B.      **Plaintiffs' Claims of Discrimination**

Plaintiffs claim that they were terminated because of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. For the reasons herein stated, the undersigned finds that plaintiffs' claims fail, as defendant can show a legitimate non-discriminatory

basis for plaintiffs' termination, which plaintiffs fail to rebut with sufficient evidence of pretext.

To survive a motion for summary judgment in race discrimination cases, a plaintiff must establish a genuine issue of material fact regarding the issue of intentional discrimination. A plaintiff may demonstrate discrimination by either direct or indirect evidence. See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995). Direct evidence cases are governed by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989) (superceded in part by statute), while cases premised on indirect evidence are analyzed under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiffs argue that this is a direct evidence case. Plaintiffs claim that their foreman supervisor, Troy Willis' admissions that he repeatedly used the term "boy" to refer to both plaintiffs, even after being told to watch his words, is direct evidence of discriminatory animus. Plaintiffs contend that additional direct evidence of defendant's discriminatory animus include Mr. Vanness' and Mr. Willis' admissions that once the "boy" complaint was received, Mr. Vanness made no record of the incident, did not discipline Mr. Willis, failed to further investigate the complaint, and attempted to minimize Mr. Willis' usage of the term "boy" to plaintiffs. Plaintiffs further argue that Mr. Vanness' admitted failure to undertake any investigation related to plaintiffs' complaint about their suspension for taking too long a break, while no action was taken against a white employee also present who had taken the same length of break, constitutes direct evidence of racial discrimination.

"Direct evidence is 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a

motivating factor in the employer's decision.'" <u>Walton v. McDonnell Douglas Corp.</u>, 167 F.3d

423, 426 (8th Cir.1999) (quoting <u>Radabaugh v. Zip Feed Mills, Inc.</u>, 997 F.2d 444, 449 (8th

Cir.1993)). Direct evidence excludes "stray remarks in the workplace," "statements by

nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself."

<u>Kneibert v. Thomson Newspapers, Michigan, Inc.</u>, 129 F.3d 444, 452 (8th Cir. 1997) (quoting

<u>Price Waterhouse</u>, 490 U.S. at 277, 109 S. Ct. at 1804-05 (O'Connor, J., concurring)). In

addition, when the plaintiff relies on a discriminatory "attitude" in the workplace to show direct

evidence of discrimination, there must be a showing of a causal relationship between that attitude

and the adverse employment action. <u>See</u> <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 780

(8th Cir. 1995). At the summary judgment stage, the evidence must be sufficient to raise a jury

issue as to whether discriminatory animus played a role in the discharge. <u>See</u> <u>id.</u>

 The undersigned finds that plaintiffs have failed to present direct evidence of racial

discrimination. Plaintiffs state that their supervisor, Troy Willis, repeatedly used the term "boy"

to refer to both plaintiffs. Plaintiffs claim that the term "boy" is a racial slur. The United States

Supreme Court has held that the term "boy" is potentially probative of discriminatory animus,

whether or not accompanied by racial classification. <u>See</u> <u>Ash v. Tyson Foods, Inc.</u>, 546 U.S. 454,

456, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006). The Court also noted, however, that the

word will not always be evidence of racial animus and that the speaker's meaning will depend on

various factors including context, tone of voice, local custom, and historical usage. <u>See</u> <u>id.</u>

 In this case, Mr. Willis' usage of the term "boy" is not evidence of discriminatory animus.

Mr. Willis acknowledged that he referred to plaintiffs as "boy." <u>See</u> Deposition of Troy Willis

("Willis Depo.") at 14. Mr. Willis stated that he used the term to refer not just to the plaintiffs or

other African-American employees, but to all employees.  <u>See id.</u>  Mr. Willis testified that, for

example, he would say,"[a]ll right, boys, it's time to go back to work," when the employees'

break was over.  <u>Id.</u>  Mr. Willis testified that after his supervisor, Mr. Vanness, directed him to

watch his use of the word, he continued to use it.  <u>See id.</u> at 15.  Caucasian Atlas employees

Stephen Mattison, Louis Goehri, Rodney Sullivan, and Shawn Evans, all testified that Mr. Willis

referred to them as "boy" as well.  <u>See</u> Affidavit of Stephen Mattison at ¶¶ 2-3; Affidavit of Louis

Goehri at ¶¶ 2-3; Affidavit of Rodney Sullivan at ¶¶ 2-3; and Affidavit of Shawn Evans at ¶¶ 2-3.

Plaintiffs admitted in their depositions that they cannot dispute that Mr. Willis had called those

employees "boy."  <u>See</u> Deposition of Avery Lane ("Lane Depo.") at 36-39; Deposition of Vincent

Webb ("Webb Depo.") at , 37, 40.

Further, plaintiffs have not alleged that Mr. Willis referred to them as "boy" during or near

the time of their discharge.  Mr. Lane testified that he did not remember the last time Mr. Willis

referred to him as "boy."  <u>See</u> Lane Depo at 34.  Mr. Webb testified that Mr. Willis called him

"boy" on only one occasion, that he asked Mr. Willis to stop, and that Mr. Willis never used the

term again.  <u>See</u> Webb Depo. at 34.  As such, Mr. Willis' usage of the term "boy" was racially

neutral and is not evidence of discriminatory animus.

Even if plaintiffs could show that Mr. Willis used the term "boy" in a racially

discriminatory manner, the evidence would not constitute direct evidence of discrimination

because Mr. Willis was not involved in the decision to discharge plaintiffs.  Plaintiffs contend that

Mr. Willis was involved in the decision to discharge plaintiffs because he stated that he might have

recommended to management that plaintiffs did not need to be there.  Plaintiffs, however,

mischaracterize Mr. Willis' deposition testimony.  Mr. Willis testified as follows:

[Plaintiffs' Attorney]: Did Taylor Vanness come to you at any point before he terminated Vincent Webb and Avery Lane and talk to you about a decision to terminate them?

[Mr. Willis]: No, ma'am, not that I remember.

Willis Depo. at 46. Plaintiffs cite the following testimony as evidence that Mr. Willis participated in the decision to discharge plaintiffs:

[Plaintiffs' Attorney]: Had you ever recommended to management that somebody be fired?

[Mr. Willis]: As far as being fired, I wouldn't just out and say fire. I would recommend to Taylor [Vanness] people that I didn't think we needed there. If that's what you perceived fired, yes, ma'am, I guess I did.

***

[Plaintiffs' Attorney]: Did you ever make a recommendation to management that Vincent Webb and/or Avery Lane didn't need to be there?

[Mr. Willis]: I don't recall if I did or not.

Willis Depo. at 63-64. This testimony does not reveal that Mr. Willis participated in the decision to discharge plaintiffs. Rather, it merely shows that Mr. Willis has, in the past, made general recommendations about employees. Mr. Willis specifically testified that he did not have the authority to discharge employees and that he was never involved in decisions to terminate employees. See Willis Depo. at 61. Further, Mr. Vanness testified that only he, Larry Jones, and Traci Golden were involved in the decision to discharge plaintiffs. See Deposition of Taylor Vanness ("Vanness Depo.") at 20.

Plaintiffs contend that additional direct evidence of defendant's discriminatory animus include Mr. Vanness' and Mr. Willis' admissions that once the "boy" complaint was received, Mr. Vanness made no record of the incident, did not discipline Mr. Willis, failed to further investigate

-10-

the complaint, and attempted to minimize Mr. Willis' usage of the term "boy" to plaintiffs.

Mr. Vanness testified that Mr. Lane complained to him that Mr. Willis had been referring to him as "boy." <u>See</u> Vanness Depo. at 77-78. Mr. Vanness stated that he then spoke to Mr. Willis about the concerns raised by Mr. Lane. <u>See id.</u> at 78. Mr. Vanness testified that he directed Mr. Willis to stop referring to employees as "boy." <u>See id.</u> at 79. Mr. Vanness stated that he did not hear another thing about the issue after he spoke with Mr. Willis. <u>See id.</u> at 78. Mr. Lane testified that he never complained to Mr. Vanness about being called "boy" again after his initial complaint. <u>See</u> Lane Depo. at 36. Mr. Webb admitted that he never made a complaint to management about Mr. Willis referring to him as "boy." <u>See</u> Webb Depo. at 34. As such, Mr. Vanness' handling of Mr. Lane's complaint is not evidence of discriminatory animus.

Plaintiffs also contend that Mr. Vanness' attempts to minimize Mr. Willis' usage of the term "boy" to plaintiffs constitutes direct evidence of discrimination. Specifically, plaintiffs claim that Mr. Vanness told Mr. Lane that Mr. Willis "meant no harm" in calling him boy. As support for their argument that Mr. Vanness' response to Mr. Willis' comments constitutes evidence of discriminatory animus, plaintiffs cite <u>Stacks v. Southwestern Bell Yellow Pages, Inc.</u>, 27 F.3d 1316 (8th Cir. 1994), and <u>Brown v. East Miss. Elec. Power Ass'n</u>, 989 F.2d 858, 862 (5th Cir. 1993).

Although the Eighth Circuit in <u>Stacks</u> held that a manager's response to a supervisor's use of a racial slur minimizing the complaint can show that the manager was motivated by discriminatory animus, the facts of <u>Stacks</u> are distinguishable from this case. 27 F.3d 1316, 1324-25 (8th Cir. 1994). In <u>Stacks</u>, a sexual harassment and discrimination case, the plaintiff's manager was aware of the plaintiff's supervisor's statements that "women and blacks were the worst thing

that had ever happened to the company," and attempted to minimize the comment by explaining that the supervisor was only referring to women and blacks who did not work. Id. at 1324. The Court held that the manager's response to the supervisor's comment was evidence that the manager was motivated by a discriminatory animus. See id. The Court relied on Brown, a racial discrimination case, in which the Fifth Circuit held that the plaintiff's supervisor's routine use of the term "nigger" constitutes direct evidence that racial animus was a motivating factor in disciplinary decisions when the plaintiff's manager was aware of the supervisor's comments and reprimanded the supervisor "'but never considered that [the supervisor's] blatant racist attitudes might explain his criticism of [the employee] and might undermine the objectivity of his advice with respect to [the employee's] position with the company.'" Stacks, 27 F.3d at 1324-25 (quoting Brown, 989 F.2d at 862-63).

In this case, Mr. Vanness' alleged comment minimizing Mr. Willis' use of the term "boy" is not direct evidence of discrimination. Mr. Vanness testified that he "may have" assured Mr. Lane that Mr. Willis meant no harm as Mr. Willis referred to all employees in that manner. Vanness Depo. at 84. Mr. Vanness also testified that he had heard Mr. Willis refer to other employees as "boy" before Mr. Lane complained and that it was "something Troy just said." Id. at 79. As discussed above, Mr. Willis' use of the term "boy" was race-neutral. Unlike the statements made in Stacks and Brown that were obviously discriminatory, Mr. Willis' usage of the word "boy" to refer to all employees was not racist. Mr. Vanness received a single complaint about Mr. Willis' use of the term "boy," spoke with Mr. Willis, and never received another complaint. As such, Mr. Vanness' handling of the complaint does not constitute evidence of discriminatory animus.

Finally, plaintiffs argue that Mr. Willis' suspending them for taking too long a break while failing to discipline white employees for the same offense constitutes direct evidence of discrimination. The parties dispute whether no action was taken against a white employee who had taken the same length of break. This factual dispute, however, is not material. As discussed above, Mr. Willis was not involved in the decision to discharge plaintiffs. Further, plaintiffs' suspension by Mr. Willis for taking too long a break was not a factor in plaintiffs' discharge.

The undersigned, therefore, finds that plaintiffs have submitted no evidence of direct discrimination. As such, their claims of discrimination will be analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). Under this analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination. See id. If the plaintiff succeeds in establishing a prima facie case, a rebuttable presumption of discrimination arises. See id. The burden then shifts to the employer who is required to articulate a legitimate nondiscriminatory reason for the adverse employment action. See id. If the employer articulates such a reason, the presumption of discrimination disappears completely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. See id. However, "[a]t all times, the plaintiff retains the ultimate burden of proving that []he was illegally discriminated against on the basis of [his] race." Id. at 1107-1108.

## 1. Prima Facie Case

To establish a prima facie case for race discrimination, a plaintiff must show: (1) he was a member of a protected group, (2) he was meeting the legitimate expectations of his employer, (3) he suffered an adverse employment action, and (4) there are facts that permit an inference of

discrimination.  Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005); Cherry v. Ritenour

Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004).  Plaintiffs can prove the fourth element by putting

forth facts that similarly situated employees, who are not African-American, were treated

differently.  Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004).  In this case, there is

no dispute that plaintiffs, African-American, are members of a protected group.  It is also

undisputed that plaintiffs suffered an adverse employment action when their employment was

terminated.  Defendant indicates that it concedes for the purpose of its Motion for Summary

Judgment that plaintiffs can establish that they were meeting Atlas' legitimate job expectations,

although defendant maintains that plaintiffs' behavior that resulted in their discharge caused them

to cease meeting Atlas' legitimate job expectations.

Defendant argues that plaintiffs cannot establish a prima facie case of race discrimination

because there are no facts supporting an inference of discrimination.  Specifically, defendant

contends plaintiffs cannot establish that Atlas treated similarly situated employees outside their

protected class more favorably.  Plaintiffs argue that evidence that a white employee wore

clothing that displayed the rebel flag or confederate flag, which is a threat and intimidating, and

that employee was not disciplined by defendant reveals that Atlas treated similarly situated

employees outside their protected class more favorably.  Plaintiffs further argue that they were

suspended for taking too long a break, while other, white employees received no such discipline,

which is additional evidence that Atlas treated similarly situated employees outside their protected

class more favorably.

At the prima facie stage, the threshold test for showing that similarly situated employees

were treated differently is low.  Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005).

Under this low-threshold standard, plaintiffs must show that they were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." Wheeler, 360 F.3d at 857 (quoting Williams v. Ford Motor Co., 14 F.3d 1305, 1308-09 (8th Cir. 1994)). See Rodgers, 417 F.3d at 852.

Plaintiffs allege that white employees wore apparel bearing a confederate flag and were not disciplined at all, while plaintiffs were discharged for wearing "stop snitching" shirts on the basis that the shirts were intimidating and threatening. Plaintiffs contend that clothing bearing the confederate flag is similarly intimidating and threatening. Mr. Willis testified that, although he never saw an employee wear clothing bearing the confederate flag, it is possible that Clay Mattison wore such clothing. See Willis Depo. at 30. Defendant argues that the conduct of wearing clothing bearing a confederate flag is not the same or similar to plaintiffs' wearing of the stop snitching shirts. Defendant further argues that the wearing of the confederate flag apparel is different because Atlas' management was not aware of the conduct and could not have disciplined them.

Construing the facts liberally and with every possible inference in favor of plaintiffs, the undersigned finds that plaintiffs have set forth sufficient evidence to show that similarly situated employees were treated differently. Plaintiffs allege that they were discharged for wearing apparel that was found to be intimidating and threatening, while white employees were not disciplined at all for wearing clothing bearing the confederate flag, which is also intimidating and threatening. As such, plaintiffs satisfy their burden under the low-threshold standard of showing that the white employees wearing clothing bearing the confederate flag are similarly situated. Although there are undoubtedly differences in the nature and circumstances of the two incidents, these differences are

relevant to the issue of pretext. Thus, the court finds that plaintiffs have sufficiently raised an inference of discrimination to satisfy the fourth element of their race discrimination claim and have thus established a prima facie case of race discrimination.

**2.      Pretext**

To rebut the presumption created when the plaintiff meets the requirements of the prima facie case, a defendant in an employment discrimination case must articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. Rose-Maston, 133 F.3d at 1108. Regarding this second step of the McDonnell Douglas burden shifting analysis, defendant has articulated a legitimate nondiscriminatory reason for its decision to terminate plaintiffs' employment. The offered justification for the termination decision is that the plaintiffs created a hostile work environment and threatened or intimidated employees by wearing the stop snitching shirts despite the problems Atlas had recently been having with employees and the term "snitching." This was also a violation of Atlas' work rule providing, "[n]o employee shall threaten, intimidate or interfere with other employees on the premises at any time." Def's Ex. 5. Accordingly, the court finds that Atlas has articulated a legitimate, nondiscriminatory reason for its decision to terminate plaintiffs' employment.

Because defendant has produced a legitimate, nondiscriminatory reason for its decision to terminate plaintiffs' employment, the burden shifts back to plaintiffs to demonstrate pretext. On this issue, "a discrimination 'plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision.'" Carter v. St. Louis Univ., 167 F.3d 398, 401 (8th Cir. 1999) (quoting

Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996)).  "The ultimate question of law remains whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff."  Carter, 167 F.3d at 401.

Plaintiffs argue that they can demonstrate pretext with evidence that all of defendant's witnesses, including Mr. Vanness and Mr. Willis, deny that plaintiffs' conduct caused anyone to feel threatened or intimidated.  Plaintiffs further argue that their evidence refutes defendant's defense that Mr. Vanness hired and fired the plaintiffs therefore creating a strong inference that discrimination was not a motivating factor in plaintiffs' termination.

With regard to their first argument, plaintiffs claim that Mr. Vanness admitted that he was not aware of Plaintiff Vincent Webb harassing or threatening any of defendant's employees at any time and that no reference is made to Plaintiff Avery Lane harassing or threatening any employee.  Plaintiffs also state that Mr. Willis admitted that Mr. Webb never intimidated or scared him and that he was not intimidated or harassed by the shirts worn by plaintiffs and knows of no one who complained of such.  Finally, plaintiffs argue that Mr. Vanness testified that Atlas employee Brenda Koester complained to him that she was concerned about the safety of Atlas employees based on plaintiffs' wearing of the stop snitching shirts when Ms. Koester's written statement did not reflect this concern.

Although it is true that Mr. Vanness testified that he was not aware of Mr. Webb harassing or threatening any of defendant's employees, this statement was made in the context of questioning regarding actual verbal threats or harassment prior to plaintiffs' discharge.  See Vanness Depo. at 40.  Mr. Vanness testified that he was not aware of any harassment or threats by Mr. Webb during the three weeks before his discharge.  See id.  Defendant, however, does not

claim that plaintiffs were discharged for a history of verbal threats or harassment prior to November 1, 2005.  Rather, plaintiffs were discharged for wearing the stop snitching shirts on November 1, 2005, which defendant construed as harassing and threatening and creating a hostile work environment.  See Affidavit of Taylor Vanness ("Vanness Aff.") at ¶ 4; Affidavit of Laurence Jones ("Jones Aff.") at ¶ 3.  Similarly, Mr. Willis' statement that Mr. Webb never intimidated or scared him and that he was not intimidated or harassed by the shirts worn by plaintiffs does not demonstrate pretext, as plaintiffs were not discharged for actually intimidating or harassing Mr. Willis.

With regard to Atlas employee Brenda Koester, Mr. Vanness testified that Ms. Koester told him that she was concerned about the safety of Atlas employees based on plaintiffs' behavior on the day they wore the stop snitching shirts.  See Vanness Depo. at 40-42.  On November 1, 2005, Mr. Vanness asked employees Johnnie Massie, Tammy Six, and Brenda Koester to write a statement outlining what they saw plaintiffs wearing on that day.  See Vanness Aff. ¶ 2.  Mr. Vanness did not ask the employees to describe how they felt or otherwise comment on the shirts. Id.  Rather, he asked specifically for a description of what plaintiffs were wearing.  Id.  In response to Mr. Vanness' request, Ms. Koester submitted a written statement simply describing plaintiffs' shirts.  See Def's Ex. 3.  Ms. Koester was not expected to describe her reaction to the shirt in her statement and she did not.  Instead, she raised her concerns to Mr. Vanness verbally. Further, Ms. Koester's perception of the shirts is irrelevant as she was not involved in the decision to discharge plaintiffs.  As such, Mr. Vanness' testimony regarding Ms. Koester is not inconsistent with Ms. Koester's statement and does not in any way demonstrate pretext.

Plaintiffs next argue that their evidence refutes defendant's defense regarding the fact that

Mr. Vanness hired and fired the plaintiffs. Defendant argues that Mr. Vanness interviewed and hired both plaintiffs knowing their race, approved their pay increases, and discharged plaintiffs, which creates a strong inference that discrimination was not a motivating factor in plaintiffs' termination. The Eighth Circuit has held that "[t]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997).

Plaintiffs contend that, while Mr. Vanness may have hired plaintiffs, Tracy Golden made the decision to fire plaintiffs, and Troy Willis had input into plaintiff's reviews and had discussions with Mr. Vanness which impacted his consideration of plaintiffs. Plaintiffs' argument that Ms. Golden alone made the decision to fire plaintiff is inconsistent with the evidence. Plaintiffs have also failed to produce any evidence that Mr. Willis participated in any way in the decision to discharge plaintiffs. Rather, the evidence reveals that Mr. Vanness, Mr. Jones, and Ms. Golden jointly participated in the decision to discharge plaintiffs. See Vanness Aff. at ¶ 5; Jones Aff. at ¶ 4; Affidavit of Traci Golden ("Golden Aff.") at ¶ 2. Although Mr. Vanness and Mr. Jones individually had the authority to discharge plaintiffs, they consulted with Ms. Golden as an extra precaution. See id. Plaintiffs' contention that it was Ms. Golden's decision alone to discharge plaintiffs is also not supportive of plaintiffs' case, as plaintiffs allege no discrimination on the part of Ms. Golden.

Even if the "same actor inference" is not applicable in this matter because Mr. Vanness was not the only person involved in the decision to discharge plaintiffs, plaintiffs are unable to demonstrate pretext. Plaintiffs cannot show that similarly situated employees outside their class were treated more favorably. "At the pretext stage of the McDonnell Douglas burden-shifting

framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." <u>Rodgers</u>, 417 F.3d at 853. Plaintiffs must show that they and the employees outside their protected group were similarly situated in all relevant respects. <u>Id.</u>

Plaintiffs contend that they were similarly situated to white employees who were not disciplined for wearing clothing bearing the confederate flag. Plaintiffs, however, admit that they did not complain about the clothing to management and that they were not aware of anyone else complaining about the clothing. <u>See</u> Lane Depo. at 49-50, 90; Webb Depo. at 62-64. Mr. Vanness testified that he never saw an Atlas employee wear clothing bearing the confederate flag and if he had, he would have asked the employee to stop wearing the clothing and may have fired the employee. <u>See</u> Vanness Depo. at 86-88. Atlas management could not have disciplined the employees who allegedly wore clothing bearing confederate flags as they were not aware of the conduct.

Plaintiffs were discharged for creating a hostile work environment and threatening of other employees by wearing the "no snitching" t-shirts. Plaintiffs wore the shirts during a time when Atlas was having problems with employees and the term "snitching." Specifically, during the month of October 2005, an Atlas employee or group of employees wrote the word "snitch" in marker on employee Terry McNew's locker in the locker room, and someone kicked a hole in the locker-room wall. <u>See</u> Lane Depo. at 76-77; Webb Depo. at 56-58. Mr. Vanness and other management employees held a meeting during the week before November 1, 2005, regarding the incident. <u>See</u> Vanness Depo. at 32. Atlas' General Safety Rules provide in part, "[n]o employee shall threaten, intimidate or interfere with other employees on the premises at any time." Def's Ex. 5. Both plaintiffs received and reviewed these rules in April 2005. <u>See</u> Lane Depo. at 22-23;

Webb Depo. at 20. Plaintiffs were discharged for threatening employees in violation of these company rules. See Def's Exs. 1, 2.

Plaintiffs do not argue that other employees outside their class were not disciplined for wearing similar "no snitching" shirts. In fact, plaintiffs admit that no Atlas employee had worn the "stop snitching" logo to Atlas' Sikeston facility prior to November 1, 2005. See Lane Depo. at 86; Webb Depo. at 61. Under these circumstances, the employees who allegedly wore clothing bearing confederate flags are not similarly situated in all relevant respects to plaintiffs. Plaintiffs conduct was perceived as threatening by Atlas management in light of the problems Atlas had been having with the term "snitching" and vandalism. Atlas management was not aware that any employee wore clothing bearing confederate flags. As such, plaintiffs have failed to demonstrate that they were treated less favorably than similarly situated employees outside their class.

Plaintiffs have failed to produce evidence that creates a fact issue as to whether defendant's proffered reasons are pretextual. Plaintiffs have produced no evidence that creates a reasonable inference that race was a determinative factor in defendant's decision to terminate plaintiffs. Plaintiffs do not claim that the decisionmakers in this case, Mr. Vanness, Mr. Jones, and Ms. Golden, were motivated by discriminatory animus. Rather, plaintiffs admitted that Mr. Vanness never said or did anything that made them believe he was racist and that they had no reason to believe Mr. Jones was prejudiced against African-Americans. See Lane Depo. at 56-58; Webb Depo. at 42. Plaintiffs have made no allegations against Ms. Golden and Ms. Golden stated that she did not even know plaintiffs' race until they filed their discrimination charge. See Golden Aff. at ¶4. Further, although no specific individual replaced either plaintiff, in the year following plaintiffs' discharge, Atlas' Sikeston facility hired fifteen African-Americans, four of which were

hired by Mr. Vanness.  <u>See</u> Golden Aff. at ¶ 6.

To survive summary judgment, a plaintiff must set forth affirmative evidence and specific facts which show that there is a genuine dispute on the issue.  <u>See</u> <u>City of Mt. Pleasant, Iowa</u>, 838 F.2d at 273-274.  Here, plaintiffs make no such showing on the issue of pretext.  The court finds that the evidence is insufficient for a reasonable trier of fact to infer that race was a determinative factor in defendant's decision to terminate plaintiff.  Thus, plaintiffs have failed to rebut defendant's legitimate, nondiscriminatory reason for terminating plaintiff's employment.  Accordingly, summary judgment will be entered in favor of defendant.

## ORDER

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment

(Doc. No. 12) be and it is hereby **granted.**  A separate Summary Judgment will be entered on this

date.

Dated this  _25th_  day of March, 2008.

_Lewis M. Blanton_

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE